(No. 13106.—Decree affirmed.)

EDWARD W. PAYNE, Appellant, *vs.* LOUIS L. EMMERSON, Secretary of State, Appellee.

*Opinion filed December 17, 1919.*

1. CONSTITUTIONAL LAW—*political and civil rights defined.* A political right is a right exercisable in the administration of government, while a civil right is a right accorded to every member of a distinct community or nation.

2. EQUITY—*equity has no jurisdiction over political matters unless property rights are involved.* The jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights, and equity has no jurisdiction over matters of a political nature unless civil property rights are involved.

3. ELECTIONS—*equity cannot issue injunction to restrain holding of election.* A court of equity cannot issue an injunction for the purpose of restraining the holding of an election or in any manner directing the mode in which the same shall be conducted, whether it is contended that the election is without authority of law or otherwise, as an election is purely a political matter.

4. SAME—*tax-payer has no right to injunction to prevent holding an election because of its expense.* The fact that the cost of an election will have to be borne by the State, and indirectly by the tax-payers, is not ground for an injunction, at the relation of a tax-payer, to prevent the Secretary of State from certifying proposed public policy questions to be voted upon at such election, even though it is contended that they are not proper questions to be submitted.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

F. J. SULLIVAN, and WINSTON, STRAWN & SHAW, (P. B. WARREN, and W. L. PATTON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, CLARENCE N. BOORD, and STEVENS & HERNDON, for appellee

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant filed his bill of complaint in the circuit court of Sangamon county, alleging, in substance, that he is a citizen and tax-payer of said county; that appellee is the Secretary of State for the State of Illinois; that pursuant to a petition filed with him purporting to be signed by ten per cent of the registered voters of the State of Illinois, appellee is assuming and purporting to act under an act entitled "An act providing for an expression of opinion by electors on questions of public policy at any general or special election," approved May 11, 1901, and intends to make and deliver to the county clerk of every county in the State of Illinois a certificate certifying to the correctness of three proposed questions of public policy to be therein given, and that they shall be submitted to the electors of this State to be voted upon on Tuesday, November 4, 1919, and that they shall be printed on separate ballots from the ballots containing the names of candidates; that said propositions are the following:

*"Initiative and Referendum.*

"No. 1. Shall the members of the fifth constitutional convention be instructed to submit a proposal for the initiative and referendum; the term 'initiative' as herein used meaning the power to bring proposed laws and constitutional amendments to popular vote, at any regular election, by petition of 100,000 electors at large, all measures so submitted to become laws when approved by a majority of those voting thereon; the term referendum, as herein used, meaning the power to suspend a specified act or acts of the legislature, by petition of 50,000 electors at large, until such act or acts shall have been referred to popular vote and approved by a majority of those voting thereon; said pow-

ers of the initiative and referendum also to be understood as being extended by the constitution to the electors of every municipality and other political subdivision or district of the State, and to apply to all local, special and municipal legislation in or for their respective municipalities and subdivisions or districts?

### *Gateway Amendment.*

"No. 2. Shall the members of the fifth constitutional convention be instructed to submit the proposal for the initiative and referendum as defined in question No. 1, for a separate vote, in such manner that said proposal, if approved by a majority of those voting thereon, shall take effect, either as part of a new constitution or as an amendment of article 4, section 1, of the present constitution?

### *Public Ownership.*

"No. 3. Shall the members of the fifth constitutional convention be instructed to submit to the electors constitutional provisions granting to the State and to cities, towns, villages and other municipal corporations and districts the power to acquire outside of and beyond any constitutional debt limitations, income-producing utilities, such as water works, gas works, electric light and power plants, street railways, urban and interurban transportation system, telephone and telegraph systems, elevated railways, warehouses, elevators, wharves, docks and cold storage plants and stock yards, abattoirs and mines?"

It is further alleged in the bill that the certification of said proposed questions by appellee and the submission thereof to the electors to be voted on at said election are unlawful and in violation of the laws of this State; that the printing thereof will be an unauthorized and illegal use of the revenue and moneys of the tax-payers of this State, and that unless restrained and enjoined appellee will certify to the county clerks said questions to be printed on ballots

and will be submitted to the electors at said election. The prayer of the bill is that appellee be restrained by injunction from so certifying said questions.

On October 4, 1919, the circuit court, on motion, dissolved the temporary injunction theretofore granted, sustained a demurrer to the bill of complaint and dismissed it for want of equity. The cause was appealed to this court and submitted at the October term, owing to the urgency of the case. An order and judgment were entered denying the motion of appellant to continue in force the injunction and affirming the decree of the circuit court, and it was announced that the opinion of the court would be filed later.

It is contended by appellant, among other things, that the form of the questions proposed to be submitted to the electors indicates, beyond question, a purpose to secure from the electors definite and positive instructions to the delegates to the constitutional convention to embody specific proposals of amendments to the new constitution to be submitted by such convention for ratification. He further contends that the electors have no such power or right; that such questions are not questions of public policy within the meaning of said statute giving the right to the people of an expression of their opinion, and if so the statute is unconstitutional; that it is a constitutional right that the delegates to the convention shall be free to employ their best judgment, unfettered by directions or instructions of any kind or character, and that the Secretary of State has no power under the Public Policy act, or otherwise, to submit or certify for submission to the electors any such questions as proposed; that equity has jurisdiction to prevent such threatened wrong, as it is plainly in violation of the constitution and is unauthorized by law, and that in case such questions be certified, appellant and all other tax-payers will be required to pay the expense of printing and preparing ballots for such election or expression of the people, without warrant of law and for a wholly illegal purpose.

Appellee concedes that there is no power, under the constitution, to instruct or command the constitutional delegates to do any act within the scope of their official duties; that the expression of the people's wish upon such questions is merely advisory, not binding upon the constitutional delegates, and that they would have the legal right to disregard such vote or expression of the people. He does contend that the questions are questions of public policy, and that under said section of the statute and under section 17 of article 2 of our constitution the people have "the right to assemble in a peaceable maner, * * * to make known their opinions to their representatives" and their wishes to the delegates by voting upon said propositions. The main contention of appellee is that the subject matter of the suit is not within the jurisdiction of a court of equity and that the allegations of the bill do not entitle complainant to the injunction sought by its prayer.

It is clearly apparent that the settling of the issues in this case upon the merits involves the settling of political as distinguished from civil, personal or property rights. The prayer of the bill is that appellee be enjoined from certifying said questions. No relief whatever can be granted under this bill unless that prayer is sustained, whether the same be relief against the paying by the tax-payers of the cost of printing and preparing the ballots or otherwise. A political right is defined by Anderson to be "a right exercisable in the administration of government," while a civil right is "a right accorded to every member of a distinct community or nation." Bouvier puts it thus: "Political rights consist in the power to participate, directly or indirectly, in the establishment or management of government." "Civil rights are those which have no relation to the establishment, support or management of the government. These consist in the power of acquiring and enjoying property, of exercising the paternal and marital powers, and the like." (*People* v. *Barrett,* 203 Ill. 99.) To grant

or refuse the injunction in this case upon the merits would amount to settling the political rights of the parties to this suit after passing upon the various contentions aforesaid.

It is a general, well established and recognized rule in this State that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights, and that it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. (*Spies* v. *Byers,* 287 Ill. 627; *People* v. *McWeeney,* 259 id. 161; *People* v. *Barrett, supra.*) Accordingly it has been held in a great number of cases in this State that an injunction will not issue out of a court of equity for the purpose of restraining the holding of an election or in any manner directing or controlling the mode in which the same shall be conducted. The reason is that an election is a political matter with which courts of equity have nothing to do, and that such an attempt to check the free expression of opinion, to forbid the peaceable assemblage of the people, to obstruct the freedom of elections, if successful, would result in the overthrow of all liberties regulated by law. (*People* v. *City of Galesburg,* 48 Ill. 485; *Walton* v. *Develing,* 61 id. 201; *Dickey* v. *Reed,* 78 id. 261; *Sheridan* v. *Colvin,* 78 id. 237; *Harris* v. *Schryock,* 82 id. 119; *Fletcher* v. *Tuttle,* 151 id. 41.) The rule is the same whether it is contended that the election is without authority of law or otherwise. Pomeroy, in his latest edition of Equity Jurisprudence, (secs. 1753-1755,) lays down the same rule, and further says that the rule goes to the extent that an injunction will not be issued to forbid any of the steps in the proceedings looking to or pertaining to an election. He also lays it down as the law that the mere fact that the cost of the election will have to be borne by the State, and indirectly by the tax-payers, is no ground for an injunction at the relation of a tax-payer, because the injury is too trifling. In the case in hand appellee was the only party defendant, and the only way to have prevented

the alleged illegal expense would have been for the court to have enjoined him from certifying said question, as prayed for in the bill, and there can be no question that the court had no jurisdiction to grant that relief.

The only question considered by this court in entering its judgment was the one of jurisdiction of the subject matter, and for the foregoing reasons the decree of the lower court is affirmed. *

*Decree affirmed.*