## WILLIAM THOMAS, Appellant, *v.* JOSEPH G. BOWMAN, and WILLIAM HARROW, Appellees.

### APPEAL FROM LAWRENCE.

Thomas filed a bill against the heirs of Dubois, claiming title to a lot as trustee, and made Wise, the occupant of the premises, a party defondant. He obtained a decree finding title in him as trustee, and a judgment for costs against all the defendants. An execution was issued under this judgment for costs, and under it the same premises were sold to Thomas. Bowman having obtained a judgment against all the defendants in the chancery suit, except Wise, redeemed from Thomas' sale, and the same premises were sold under his execution to Bowman and Harrow. Thomas accepted the redemption money. Upon ejectment brought for the premises by Bowman and Harrow, it was *held*, that, as the decree found the title to be out of Dubois' heirs and in Thomas, and as the execution under which Thomas bid in the

Thomas *v.* Bowman et al.

property was against Wise also, who was in possession, Thomas took nothing by this sale except Wise's possessory title, and could still assert his title under the decree, as against the heirs and those claiming in succession to them.

The receipt, by Thomas, of the redemption money, from those holding an execution against the heirs of Dubois, would not estop him from setting up his title under the decree, against the purchasers under that execution, unless he had actually adopted a line of conduct which had induced them to purchase under it.

The title of the Dubois heirs having been divested by the decree before either of the executions were issued, a sale under the last execution against them could not pass any title to the purchaser. If the acceptance of the purchase money should estop Thomas from setting up his title, this estoppel could not vest a legal title where none existed before, so as to enable Bowman and Harrow to maintain ejectment.

The receipt of the redemption money by Thomas under the circumstances, was no admission of Bowman's right to redeem. Thomas being a mere trustee, had no right to make admissions to the injury of his *cestui que trust.*

THE facts in this case are fully stated in the opinion of Mr. Justice BREESE.

W. THOMAS, *pro se.*

1. The decree of the Sangamon Circuit Court proves that the title to the lot in question had passed from the heirs of Dubois, and had been vested in him as trustee, etc., long before the date of either judgment, under which the parties claim.

2. By the sale under the execution issued by the clerk of the Supreme Court, the appellant Thomas acquired the possessory title of the defendant Wise, which was liable to be sold, but as the heirs of Dubois had no title, nothing passed from them.

3. The title of Thomas, as trustee, was not affected or changed by his purchase under the execution against the heirs of Dubois and Wise.

4. If the heirs of Dubois had redeemed from the sale to the appellant, their position with reference to title would have been the same as that occupied by them before the sale, and their judgment creditor stands in no better condition.

5. All that appellees can claim under their redemption

and purchase, is, that they stand in the position of the heirs of Dubois. If said heirs had no title, then appellees have none; with this difference, however, that here the right and title of Wise was sold, and the redemption under judgment against others, and not against him, could not operate upon the title acquired from him.

6. In this action, the appellant, by showing title out of the heirs of Dubois, was entitled to judgment. The right to recover depended on the question of title in those heirs, and that right would be defeated by showing that the title had passed from them before the date of the judgment.

7. The case stands as if A purchased the land of B on a judgment against C, and subsequently E, by virtue of a judgment against C, redeemed the land, obtained sheriff's deed, and then commenced his action of ejectment against B, to recover possession—or, as the facts here show, the judgment is against C and F, the land of F is sold, a judgment creditor of C redeems from the sale, and then sues to recover the land. Can he recover without showing title in C, against whom he obtained the judgment?

E. Beecher, for Appellees.

On behalf of appellees we submit the following propositions and authorities in support of the decision of the court below:

1. Judge Thomas, by selling the lot in question on an execution against the Dubois heirs, admitted their interest in it.

2. By receiving the redemption from Bowman without objection, he admitted Bowman's right to redeem.

3. By causing the lot to be sold as Dubois', or accepting the redemption money, he is estopped from claiming title to it adverse to that of Dubois or their assigns.

4. The law will not allow a party to receive and hold the redemption money, and also retain the property redeemed. Such a doctrine would be so palpably unjust as not to require or even excuse an argument to refute it.

Thomas *v.* Bowman et al.

5. Judge Thomas selling the lot, or accepting the redemption, is analagous to a person standing by and seeing his own property sold as the property of another without objection. By such silence he is estopped from afterwards asserting his claim.

6. The fact that Wise was a party to the judgment on which the lot was first sold, cannot affect the case; for Judge Thomas, by his bill in the chancery suit, (and for the cost of which the lot was sold), charges that the lot was claimed by the Dubois heirs, and nowhere avers that Wise pretended to have any claim whatever to it except as a tenant. The suit was to settle the Dubois claim, and not any claim of Wise.

7. Judge Thomas, by the decree which he took in the chancery suit, and which is in evidence here, shows that the Dubois heirs, and not Wise, were the only ones claiming the lot; and the decree, so far as it relates to title, is against them exclusively.

8. A redemption in bank bills is legal, if not objected to for the reason of its being in paper instead of coin. 2 Greenl. Ev., sec. 522; *Phillips* v. *Blake*, 1 Metcalf, 158; *Snow* v. *Perry*, 9 Pick. 539.

It is insisted by Judge Thomas, that the Dubois heirs not having any title on which the execution could attach, therefore all the proceedings on the execution of Bowman are void; or, in other words, that Bowman, on a judgment against the Dubois heirs, could take no greater or other interest than the heirs themselves could have claimed. In the case of *McLagan* v. *Brown et al.*, 11 Ill. 519, this court held that a judgment creditor could redeem, on a judgment obtained after the judgment debtor had parted with his equity of redemption, the land having been sold on a judgment in force while the defendant was the owner. In that case the redeeming creditor clearly took what neither the judgment debtor nor his assignee could have taken.

We think we cannot be mistaken in the position we take—that Judge Thomas, by selling this property on an execution against the Dubois heirs, admitted some kind of title in them; especially when he himself furnishes us the evidence

that they, and not Wise, were the ones with whom he was contending. Or, if we are incorrect in this, that by his accepting the redemption money he is most clearly bound. If he was claiming the lot by prior title, why did he receive the money from the sheriff? Why not at the time tell us we were mistaken in supposing we had a right to redeem? If another instead of Judge Thomas had bought the lot, it would have been great injustice to allow him to stand by and see Bowman paying out his money on a claim which he, Thomas, knew to be void. In this case he not only stands by and sees such proceedings without objection, but he actually reaps the rewards of such violation of good faith by receiving the redemption money—receiving what at the time he knew he had no right to. And what excuse can be made for such a proceeding? He can't pretend he was misled by any one. He can't pretend that Bowman, or Bowman and Harrow, said anything to mislead or deceive him. He can't say he did not know his rights, and his duty in the premises. But we can say truly that by the conduct of Judge Thomas we have been misled to our injury. He has received money that he now asserts he has no right to, and still keeps the money, and proposes to keep the land also. We submit the case in entire confidence.

W. Thomas, *pro se,* in reply.

1. The execution on which the lot was sold to him as trustee, etc., was against the Dubois heirs, and Wise, who had possession, and whose rights, whatever they were, could be sold on the execution. The heirs of Dubois had no title, and no right or title was acquired by the purchase, as derived from them.

2. The trustee could do no act to the prejudice of the trust estate. He would not be allowed to make an admission such as contended for by appellees.

3. The plaintiff could not recover without showing title in the heirs of Dubois. He has not only failed to do this, but the record shows they had no title.

4. No question arises on the record as to the right of the trustees to retain the redemption money as well as the lot. It may be, that, upon a proper case, the court would require the redemption money to be refunded. That case is not now before the court.

5. The appellees knew, when they paid the redemption money, that the execution on which the property was sold to the trustee, was against Wise as well as the heirs of Dubois, and that Wise was in possession of the property at the time of the sale, and that his right of possession was liable to be sold on execution. That they knew these facts is evidenced by the agreement of facts on which the Circuit Court decided.

6. Whatever may have been the right or duty of the trustee in the premises, no act or omission on his part could affect the rights of the trust fund, unless the action was in the proper execution of the trust. If the trustee acted improperly with reference to appellees, he is personally responsible, and the court will not permit the trust estate to suffer by such action.

BREESE, J. This was an action of ejectment brought in the Lawrence Circuit Court, by Bowman and Harrow, against Wise, for the recovery of lot twenty-one in the town of Lawrenceville. At the April term, 1861, of the Circuit Court of that county, William Thomas, claiming to be the owner of the lot, was admitted defendant in the place of Wise, and filed his plea of not guilty. A trial was had, by consent, by the court, without the intervention of a jury, and a verdict found for the plaintiffs.

The facts, as they appear from the bill of exceptions, are these: Thomas, as trustee of the Bank of Illinois, claiming an equitable title to the lot in controversy, in his right as such trustee, commenced a suit in chancery in the Circuit Court of Lawrence county, against the heirs at law of Touissant Dubois, deceased, and George W. Wise, who was in possession of the lot, and for the purpose of effecting a par-

7

tition thereof between the parties, according to their rights, as might be determined in that suit. The defendants appeared and put in their demurrer to the bill, which was sustained, and the bill dismissed. The case was then taken to this court, and at the December term, 1856, was heard *ex parte*, and the decree reversed, and a judgment for costs entered against all the defendants, and the cause remanded to the Lawrence Circuit Court for further proceedings. At the May term, 1857, of that court, the demurrer to the bill was overruled, and the defendants required to put in their answer, and the venue changed, by consent, to the county of Sangamon. At a term of the Circuit Court of that county, the defendants having failed to answer, a decree *pro confesso* was rendered against them, and the court, proceeding to hear the cause on the bill, exhibits and testimony, found the title to the lot to be vested in Thomas, as trustee of the Bank of Illinois, and entitled to the exclusive possession thereof, and ordered that possession be surrendered to him, and the defendants enjoined from setting up or asserting any right, title, or claim to the same, and that the defendant Wise pay over to the complainant the rents due and to become due for the use of the lot and appurtenances.

On the 20th of June, 1857, an execution was issued upon this judgment of this court, for the costs awarded Thomas therein, which was levied by the sheriff of Lawrence county, on the 25th of July, 1857, on the lot in controversy, and he sold the same in satisfaction to Thomas, Wise still being in possession.

At the October term, 1858, of the Lawrence Circuit Court, Joseph G. Bowman obtained a judgment against all the defendants in the chancery suit, except Wise, upon which an execution was issued and delivered to the sheriff of Lawrence county, on the 25th of October, 1858, and Bowman, claiming the right to redeem the lot from the sale to Thomas, fifteen months not having expired, paid to the sheriff the amount in bank bills necessary to redeem the lot, and thereupon, caused the lot to be levied on, and sold to satisfy the execution.

Bowman and Harrow became the purchasers, to whom the sheriff executed a deed. The sheriff paid over to Thomas the amount of money he received from Bowman on the redemption, and received from him a writing, indorsed on the certificate, as follows: "Lawrenceville, Ills., 20th Dec., 1858. Joseph Bowman, a judgment creditor of Jesse K. Dubois, and, (setting out the names of the defendants,) having paid to the sheriff of Lawrence county, the sum of seventy-four dollars and nineteen cents of bank bills, for the purpose of redeeming the property herein described, from the sale stated in this certificate, the sheriff has paid me the said sum of money in bank bills."

On this testimony the Circuit Court decided that Bowman and Harrow were seized in fee of the lot in controversy, and rendered a judgment that the defendant, Thomas, was guilty of the trespass and ejectment.

From this decision Thomas prayed an appeal to this court, and assigns for error the general errors, and we are to determine whether there is sufficient in the record to justify this recovery and judgment.

The appellees, to sustain the judgment, insist that Thomas, by the mere fact of selling the lot on an execution against the heirs of Dubois, admitted thereby, their interest in it.

It will be remembered, that the judgment for costs in the Supreme Court, was against the heirs-at-law of Dubois and Wise, and that Wise was in the actual possession of the premises. The execution on this judgment was against Wise also, and his possessory title or right was subject to sale under it. The decree rendered by the Sangamon Circuit Court establishes the title out of the heirs of Dubois, and in Thomas as trustee of the Bank of Illinois. Consequently, on a sale of the lot, on the execution for costs against the heirs of Dubois and Wise, Thomas, when he purchased, bought nothing to which the heirs of Dubois had title. His title was not derived from that sale and purchase. It existed out of them long before the sale, and in Thomas, as the Circuit Court of Sangamon county had found by its decree. Wise's possessory

right, whatever it may have been, was a proper subject of sale and purchase, and to that Thomas succeeded, but derived nothing from the heirs of Dubois.

It is insisted, also, that Thomas admitted the right of Bowman to redeem, by receiving, without objection, the redemption money. We do not regard the receipt of the redemption money, by Thomas, as affecting the title to the lot. We think it can have no such effect, more especially against one acting in a fiduciary character. His position would not allow him to make any admission to the prejudice of the trust fund, and against his *cestui que trust.* Lewin on Trusts and Trustees, 72, L. L. 437.

It is also insisted, that Thomas is estopped from claiming title to the lot adverse to the heirs of Dubois, by his having sold the lot as the property of Dubois, on his execution, and accepting the redemption money from Bowman; and by accepting the redemption money, he stands in the position of one who sees his property sold, as the property of another, and makes no objection—that by such silence he is estopped from afterwards asserting his claim.

An estoppel *in pais* can only be set up as a means to prevent injustice—as a shield, not as a sword. If the receipt of the redemption money by Thomas, influenced, or caused the act of Bowman, in levying on, and selling these premises, and actually led him into the line of conduct he adopted, it might be that Thomas would be concluded. But the case nowhere shows that Thomas had any knowledge of the levy and sale to Bowman and Harrow, until the 20th of December, near three months after the levy. He did not instigate it. He did not stand by and see the thing done, nor was he in a position to advise or prevent the one or the other. The whole proceeding originated with, and was concluded by Bowman and at his risk, uninfluenced by the conduct of Thomas in any degree. The doctrine of estoppel cannot, we think, be successfully invoked to establish a title in the heirs of Dubois, who had no title when the property was sold on the execution in favor of Thomas,

against them and Wise, and when Bowman caused it to be sold. The mere naked fact of the receipt of the redemption money cannot have this effect. The case of *Letcher* v. *Morrison*, 27 Ill. 214, is in point. A title cannot be created, as a general rule, in this way, nor a party divested by such an act. It may not be equitable that Thomas should retain the redemption money, but that consideration is.not involved in this case.

It is a well settled rule in the action of ejectment, that the plaintiff must recover on the strength of his own title. He must show a legal title. Now this record shows nothing of the kind. It does not show a derivative title from the heirs of Dubois, but does show a decree in chancery by which the title was declared out of them long before either of these parties had any interest in the premises. The isolated fact of the receipt of the redemption money under the circumstances shown in this case, cannot have the potent effect of creating a title where none existed. The case of *McLagan* v. *Brown*, 11 Ill. 519, can have no application, for here was no title in the heirs of Dubois, and consequently, no equity of redemption in favor of a subsequent judgment creditor.

It is unquestionably true, that Thomas, in litigating in chancery with the heirs of Dubois, and Wise, knew that his title as trustee was derived from their ancestor, and it was to have the title decreed out of them, and in him, that the bill was filed. The decree shows most conclusively that the heirs of Dubois, as such, had no title to the lot, it having passed from them many years before. Wise had a possessory right subject to sale, and this right Thomas might purchase. The appellees knew also, when Bowman obtained his judgment and execution, and had a levy and sale of the lot, that the heirs of Dubois had not a shadow of title to it, and consequently Bowman could get no equity of redemption to be available.

In every light in which we can view this case, we cannot discover any principle, applicable to the facts, to justify the verdict. What a court might do on a proper case being

made, looking to the recovery of the redemption money, we cannot now say. That the facts do not show a title, in fee, in the appellees, to the lot in controversy, we are well satisfied, and accordingly reverse the judgment, and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed.*